United States District Court
Southern District of Texas
**ENTERED**
November 20, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| ROY ANTHONY BROWN, JR., | § § § § | |
| Plaintiff. | | |
| V. | § § | CIVIL ACTION NO. 3:20-cv-00281 |
| COMMISSIONER OF SOCIAL SECURITY, | § § § § § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Roy Anthony Brown, Jr. ("Brown") seeks judicial review of an administrative decision denying his applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act (the "Act"), respectively. Before me are competing motions for summary judgment filed by Brown and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 18, 21. After reviewing the briefing, the record, and the applicable law, I recommend that Brown's motion for summary judgment be **DENIED**, and the Commissioner's motion for summary judgment be **GRANTED**.

## BACKGROUND

Brown filed applications for disability insurance and supplemental security income benefits on April 23, 2018 and February 12, 2019, respectively. In both applications Brown alleged disability beginning November 24, 2017. Brown's application was denied and denied again upon reconsideration. On December 19, 2019, an Administrative Law Judge ("ALJ") held a hearing. On February 6, 2020, the ALJ issued a decision, finding that, if Brown discontinued his substance use, he would not be disabled. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

At Step 1, the ALJ found that Brown had "not engaged in substantial gainful activity since November 24, 2017, the alleged onset date." Dkt. 15-3 at 27.

At Step 2, the ALJ found that Brown suffered from "the following severe impairments: mild neurocognitive disorder due to traumatic brain injury, adjustment disorder, lymphomas (NOS), left side sciatica, mild spondylosis of the lumbar, sinusitis, history of the right tibia and shoulder fracture, history of left femur fracture and substance use." *Id.*

At Step 3, the ALJ found that, including Brown's substance use, his impairments met one of the Social Security Administration's listed impairments. *See id.* The ALJ also found, however, that if Brown ceased his substance use, he would not have an impairment that met the severity of one of the listed impairments. *See id.* at 29.

Prior to consideration of Step 4, the ALJ determined Brown's RFC as follows:

> [I]f [Brown] stopped the substance use, [he] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with an ability to lift and carry ten pounds occasionally and five pounds frequently. [Brown] is able to stand and walk about two hours in an eight-hour workday (with normal breaks) and sit about six hours in an eight-hour workday (with normal breaks). He is able to occasionally climb ramps and stairs but never

3

climb ladders, ropes or scaffolds. [He] is able to occasionally balance, stoop, kneel, crouch and crawl. [He] should not work around unprotected heights, open flames or dangerous and/or moving machinery. He is limited to occasional overhead reaching bilaterally. Mentally, [Brown] can understand, remember and carryout short and simple instructions. He can maintain attention and concentration for extended periods on simple tasks. In addition, [Brown] is limited to simple, routine and repetitive tasks with occasional interaction with the general public, coworkers and supervisors.

*Id.* at 31.

At Step 4, the ALJ found that "[Brown] would be unable to perform any past relevant work" even if he stopped his substance use. *Id.* at 39.

Nonetheless, the ALJ elicited testimony from a vocational expert ("VE") that "there have been jobs that exist in significant numbers in the national economy that [Brown] can perform." *Id.* at 39. Based on the Medical-Vocational Rules, the ALJ explained that Brown is not disabled because he could make "a successful adjustment to work that exists in significant numbers in the national economy" if he stopped his substance use. *Id.* at 40.

## DISCUSSION

Brown advances three arguments in this appeal: (1) the Appeals Council erred in refusing to evaluate newly submitted evidence that relates to the relevant time period; (2) the ALJ's RFC is unsupported by substantial evidence because it is contradicted by a medical opinion that the ALJ found persuasive; and (3) the ALJ was appointed under 42 U.S.C. § 902(a)(3)—an unconstitutional statutory provision that violates the separation of powers—and thus lacked authority to decide Brown's claim. None are persuasive.

**A.   BROWN'S NEWLY SUBMITTED EVIDENCE WOULD NOT HAVE CHANGED THE OUTCOME**

Following the ALJ's February 6, 2020 decision, Brown submitted nine pages of additional evidence from his physician, Dr. William Burns ("Dr. Burns"): (1) medical evidence dated December 17, 2019 (2 pages); (2) treatment notes dated March 5, 2020 (2 pages); and (3) interrogatory responses dated March 5, 2020.

4

The Appeals Council declined to consider the December 17, 2019 treatment notes because they found "this evidence does not show a reasonably probability that it would change the outcome of the decision." Dkt. 15-3 at 3. The Appeals Council declined to consider the March 5, 2020 treatment notes and interrogatory responses because the evidence "does not relate to the period at issue" and therefore, according to the Appeals Council, "does not affect the decision about whether [Brown was] disabled beginning on or before February 6, 2020." *Id.* Brown contends this is reversible error because (1) the Appeals Council disregarded the March 5, 2020 evidence based on the date alone, without considering whether it reasonably related to the adjudicative period, and (2) there is a "reasonable possibility that [the March 5, 2020 evidence] would have changed the disability determination." Dkt. 18 at 12. I will assume, arguendo, that the Appeals Council erred in discounting the March 5, 2020 evidence based on the date alone. Even so, Brown must show that such error is harmful.

An error is harmless where "[i]t is inconceivable that the ALJ would have reached a different conclusion on this record." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Brown argues there is a reasonable possibility that Dr. Burns's March 5, 2020 interrogatory responses would have changed the disability determination because Dr. Burns's responses establish that Brown did *not* have a substance use disorder. *See* Dkt. 18 at 16. I disagree. Because a picture speaks a thousand words, here are Dr. Burns's responses:



5



Dkt. 15-3 at 17–18. Dr. Burns does not offer any explanation beyond his checkmarks, despite having space to provide comments. "While the use of box-check or word-circle forms specifying limitations that are *also* explained on the forms or in an associated report is not problematic, the ALJ rightly discount[s]" conclusory checkmarks with nothing more. *Simmons v. Colvin*, 635 F. App'x 512, 515 (10th Cir. 2015). In fact, the ALJ already found the December 17, 2019 interrogatory responses submitted by Dr. Burns to be "unpersuasive" because they were unsupported by the "objective medical evidence and clinical findings" in the record. Dkt. 15-3 at 38. Thus, it is difficult to conceive how further checkmark responses, devoid of any explanation whatsoever, would change the ALJ's analysis.

Yet, Brown contends that Dr. Burns's checkmark responses are "consistent with the evidence of record" because (1) "Brown reported to Dr. Burns that he had stopped all illicit drugs except marijuana"; (2) "Dr. Burns subsequently reported no further evidence of drug or alcohol use on follow-up visits on August 22 and December 17, 2019, and March 5, 2020"; and (3) "as of December 17, 2019, Dr. Burns refilled Brown's . . . narcotic pain medication, which he would not fill if Brown were using illegal drugs." Dkt. 18 at 17. First, at the risk of stating the obvious: marijuana is an illicit drug. *See* TEX. HEALTH & SAFETY CODE § 481.121. Accordingly, the evidence shows that Brown did *not* stop his illicit drug use—rather, he stopped using only cocaine and methamphetamine. Second, the fact that

6

Dr. Burns did not report any further drug or alcohol use cannot be evidence that Brown ceased drug and alcohol use when the record shows that Brown never stopped using marijuana. Finally, the notion that Brown *must* have stopped his drug use because Dr. Burns resumed prescribing Brown narcotics is an argument, not evidence. And the argument is unsupported by the record. For example, Brown testified that he "had clean drug screens" after Dr. Burns stopped prescribing him narcotics. Dkt. 15-4 at 15. Yet, Brown does not point to any clean drug screens in the record. Moreover, Brown makes no attempt to rectify this argument with the fact that Brown has apparently never stopped using marijuana. For all these reasons, Dr. Burns's interrogatory responses would not have affected the ALJ's decision. Thus, any error by the Appeals Council in refusing to consider Dr. Burns's checkmark interrogatory responses was harmless.

**B.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC**

Brown next argues that the ALJ's RFC is unsupported by substantial evidence because a December 10, 2018 function-by-function assessment completed by a state agency psychological consultant Paul Cherry, Ph.D. ("Dr. Cherry")—which the ALJ found persuasive—"establishes limitations that would preclude all competitive work." Dkt. 18 at 18. This argument turns on a November 26, 2019 checkmark interrogatory response that Dr. Cherry completed—nearly a year after completing Brown's mental RFC assessment—in which Dr. Cherry indicated that a rating of "Moderately limited means that the individual would not be able to effectively perform the described work activity . . . 20% to 29% of the workday or workweek." Dk. 15-11 at 64. This is relevant because (1) Dr. Cherry found Brown "Moderately limited" in several areas in his December 2018 opinion (Dkt. 15-5 at 28–29); and (2) the vocational expert "testified that if an individual would be off task more than 20 percent of a workday . . . there would be no jobs the individual could perform" (Dkt. 18 at 19–20). Thus, according to Brown, "Dr. Cherry's function-by-function 'assessment,' which the ALJ found was supported

by the clinical findings and 'persuasive,' does not support the ALJ's RFC or step five findings." Dkt. 18 at 20.

Setting aside that Dr. Cherry "affirmed" that Brown is "Not Disabled" (Dkt. 15-5 at 30–31), I will assume, arguendo, that Dr. Cherry's opinion contradicts the ALJ's RFC. Even so, the "assessment of residual functional capacity is an *administrative* finding reserved to the Commissioner, not *medical sources*." *Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 803 (E.D. Tex. 2006) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). "A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Ramirez*, 606 F. App'x at 777 (quotation omitted). The phrase "no contrary medical evidence" means that "[n]o medical evidence contradicts [the claimant's disability]." *Payne v. Weinberger*, 480 F.2d 1006, 1008 (5th Cir. 1973). That is not the case here where the ALJ's seven-page analysis of Brown's RFC sets forth a multitude of reasons why "the objective medical evidence and clinical findings fail to support [Brown's allegations] that he is precluded from all work activities." Dkt. 15-3 at 33. In short, Dr. Cherry's opinion does not make the ALJ's decision incredible, nor does all the medical evidence point only to a finding of disability. Thus, the ALJ's RFC is supported by substantial evidence.

## C.   BROWN'S SEPARATION OF POWERS ARGUMENT DOES NOT ENTITLE HIM TO RELIEF

Brown's final argument is that ALJ's decision denying his disability benefits claim was constitutionally defective because the Act provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers. The Commissioner agrees "that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." Dkt. 21 at 10. Nevertheless, the Commissioner argues that Brown must show that the unconstitutional statutory removal restriction caused him harm. *See Collins v.*

*Yellen*, 141 S. Ct. 1761, 1787–89 (2021). The Commissioner contends that Brown "cannot make such a showing." Dkt. 21 at 11. Brown fails to respond to this argument in his response to the Commissioner's cross-motion for summary judgment. As the Ninth Circuit held, in rejecting this precise argument:

> [Brown] has presented neither evidence nor a plausible theory to show that the removal provision caused [him] any harm. [He] does not assert, for example, that the President took an interest in [his] claim or that the Commissioner directed the Appeals Council to decide [his] case in a particular way because of the statutory limits on the President's removal authority. Nothing in the record suggests any link whatsoever between the removal provision and [Brown]'s case. . . .
>
> . . . .
>
> . . . Because [Brown] has not shown actual harm, [I] uphold the Commissioner's decision.

*Kaufmann v. Kijakazi*, 32 F.4th 843, 849–50 (9th Cir. 2022).

## CONCLUSION

For the reasons stated above, I recommend that Brown's motion for summary judgment (Dkt. 18) be **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 21) be **GRANTED**.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 20th day of November 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

9