United States District Court
Southern District of Texas
**ENTERED**
March 04, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ROY ANTHONY BROWN, JR., § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 3:20-cv-00281 |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

## AMENDED MEMORANDUM AND RECOMMENDATION

Plaintiff Roy Anthony Brown, Jr. ("Brown") seeks judicial review of an administrative decision denying his applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act (the "Act"), respectively. Before me are briefs filed by Brown and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner").[1] *See* Dkts. 18, 21. After reviewing the briefing, the record, and the applicable law, I recommend this matter be remanded to the Commissioner for further proceedings consistent with this memorandum.

## BACKGROUND

Brown filed applications for disability insurance and supplemental security income benefits on April 23, 2018 and February 12, 2019, respectively. In both applications Brown alleged disability beginning November 24, 2017. Brown's applications were denied and denied again upon reconsideration. On December 19, 2019, an Administrative Law Judge ("ALJ") held a hearing. On February 6, 2020, the ALJ issued a decision, finding that, if Brown discontinued his substance

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

use, he would not be disabled. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past

relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id*. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id*.

## THE ALJ'S DECISION

At Step 1, the ALJ found that Brown had "not engaged in substantial gainful activity since November 24, 2017, the alleged onset date." Dkt. 15-3 at 27.

At Step 2, the ALJ found that Brown suffered from "the following severe impairments: mild neurocognitive disorder due to traumatic brain injury, adjustment disorder, lymphomas (NOS), left side sciatica, mild spondylosis of the lumbar, sinusitis, history of the right tibia and shoulder fracture, history of left femur fracture and substance use." *Id*.

At Step 3, the ALJ found that, including Brown's substance use, his impairments met one of the Social Security Administration's listed impairments. *See id*. The ALJ also found, however, that if Brown ceased his substance use, he would not have an impairment that met the severity of one of the listed impairments. *See id*. at 29.

Prior to consideration of Step 4, the ALJ determined Brown's RFC as follows:

> [I]f [Brown] stopped the substance use, [he] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with an ability to lift and carry ten pounds occasionally and five pounds frequently. [Brown] is able to stand and walk about two hours in an eight-hour workday (with normal breaks)

3

and sit about six hours in an eight-hour workday (with normal breaks). He is able to occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. [He] is able to occasionally balance, stoop, kneel, crouch and crawl. [He] should not work around unprotected heights, open flames or dangerous and/or moving machinery. He is limited to occasional overhead reaching bilaterally. Mentally, [Brown] can understand, remember and carryout short and simple instructions. He can maintain attention and concentration for extended periods on simple tasks. In addition, [Brown] is limited to simple, routine and repetitive tasks with occasional interaction with the general public, coworkers and supervisors.

*Id.* at 31.

At Step 4, the ALJ found that "[Brown] would be unable to perform past relevant work" even if he stopped his substance use. *Id.* at 39.

Nonetheless, the ALJ elicited testimony from a vocational expert ("VE") that "there have been jobs that exist in significant numbers in the national economy that [Brown] can perform." *Id.* Based on the Medical-Vocational Rules, the ALJ explained that Brown is not disabled because he could make "a successful adjustment to work that exists in significant numbers in the national economy" if he stopped his substance use. *Id.* at 40.

## DISCUSSION

Brown's brief indicates at least one reason why the ALJ's decision is unsupported by substantial evidence: "the ALJ made no finding that . . . Brown has a Substance Abuse Disorder as defined in the DSM-V," the latest edition of the Diagnostic and Statistical Manual of Mental Disorders." Dkt. 18 at 16. I agree.

Social Security Ruling 13-2p sets forth the process for evaluating whether a claimant has a Substance Use Disorder. *See* SSR13-2P, Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA), 2013 WL 621536 (Feb. 20, 2013). SSR 13-2p defines "the term DAA as Substance Use Disorders; that is, Substance Dependence or Substance Abuse as defined in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association." *Id.* at *3. The ALJ here did

4

not even identify the DSM-V criteria for a substance use disorder, much less attempt to apply the DSM-V criteria. In fact, the ALJ never actually made a finding that Brown has a substance use disorder. Rather, the ALJ simply relied on an isolated medical record from May 15, 2019 documenting a positive drug test and Brown's self-reported drug use to determine that "[Brown]'s medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that [Brown]'s statements concerning the intensity, persistence, and limiting effects of these symptoms are generally consistent with the evidence when the substance use is included." Dkt. 15-3 at 28. This is not substantial evidence. *See* SSR13-2P, 2013 WL 621536, at *11 ("A single drug or alcohol test is not sufficient to establish DAA as a medically determinable impairment, nor does it provide pertinent information that can help us determine whether DAA is material to a finding of disability.").

The ALJ also found that "evidence point[ing] directly to substance use" included a medical record in which Brown "presented to his treating source for STD screening due to unprotected sex." Dkt. 15-3 at 28. The ALJ reasoned—without citing to the DSM-V, any medical opinion, or legal authority—that this "showed evidence of impulsivity and poor decision-making." *Id.* The medical record the ALJ cited for this statement is a provider's note, stating that Brown "request[ed] to be tested for STDs as he has recently had a partner that he has [learned] has been with other partners and had unprotected intercourse." Dkt. 15-13 at 46. This poorly written note could be read to mean that Brown had unprotected sex, but it can also be read to mean that the partner referenced in the note had unprotected sex with someone other than Brown, and that Brown sought testing upon learning this information. Contrary to the ALJ's opinion, the latter is evidence of thoughtful and responsible decision-making. Yet, the ALJ simply assumed—without seeking clarification or even mentioning this record during the hearing—that Brown had unprotected sex. Setting aside whether unprotected sex is even proper evidence of a substance use disorder, the ALJ's assumption about

5

the meaning of this record, without giving Brown an opportunity to clarify or respond, is yet another reason the ALJ's decision is not supported by substantial evidence. *See James v. Kijakazi*, No. 4:22-cv-703, 2022 WL 17650596, at *1 (S.D. Tex. Dec. 13, 2022) ("In reviewing the record, the non-adversarial nature of these agency hearings imposes upon the ALJ the duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. When the ALJ fails to adequately develop the facts, and that failure prejudiced the plaintiff, the agency's decision is not supported by substantial evidence." (quotation omitted)).

"A claimant's occasional maladaptive use or a history of occasional prior maladaptive use of alcohol or illegal drugs does not establish that the claimant has a medically determinable Substance Use Disorder." *Newbill v. Berryhill*, No. 17-cv-00410, 2019 WL 1434631, at *5 (S.D. Ala. Mar. 29, 2019) (quoting SSR13-2P, 2013 WL 621536, at *3). "Because substance use disorders are diagnosed in part by the presence of *maladaptive* substance use, DAA does not include '[a]ddiction to, or use of, prescription medications taken as prescribed, including methadone and narcotic pain medications.'" *Newbill*, 2019 WL 1434631, at *5 (quoting SSR 13-2P, 2013 WL 621536, at *3). "The record establishes that [Brown] was prescribed addictive opioid . . . medications, but it is devoid of any evidence reflecting that [Brown] was not taking the medication as prescribed." *Newbill*, 2019 WL 1434631, at *6; *see also* Dkt. 15-3 at 50 (showing that Brown was prescribed Tylenol with Codeine #3). Furthermore, the record shows that even after Brown reported he had ceased illicit drug use, he was still using marijuana. *See* Dkt. 15-13 at 53 ("States he has stopped all illcit [sic] drugs exept [sic] marijuana."). Yet, the ALJ made no attempt to parse which of Brown's symptoms were attributable to his illicit drug use versus prescribed opioid medications. This, too, is not substantial evidence.

Even if substantial evidence supported the ALJ's finding that Brown has a substance use disorder (which, to be clear, it does not), "the ALJ does not point to any medical source that addresses whether [Brown] would still be disabled if he

6

stopped [substance] use." *Billy v. Colvin*, No. 13-cv-819, 2014 WL 6879129, at *4 (W.D. Okla. Dec. 4, 2014) (finding that the medical record's "several assessments of substance abuse . . . do not themselves constitute objective medical evidence that cessation of alcohol use would affect the finding of disability"). "Evidence of substance use does not in itself establish materiality." *Kamp v. Kijakazi*, No. 21-35934, 2023 WL 1879469, at *2 (9th Cir. Feb. 10, 2023). Yet, "[n]o medical professional involved in this case—not even the state consultants—opined that [Brown]'s substance use was material." *Id.* To the contrary, the ALJ observed that "there is no evidence that [the state] medical consultants considered [Brown]'s substance abuse in reaching [their] assessments." Dkt. 15-3 at 29. This is yet another reason the ALJ's decision is unsupported by substantial evidence.

The ALJ determined at Step 2 that "the severity of [Brown]'s impairments met the criteria of Section 12.02" if Brown's substance use was considered. *Id.* at 27. If Brown does not actually meet the criteria for a substance use disorder, then the ALJ's analysis would suggest that Brown is disabled at Step 2. *See, e.g.*, *Redman v. Colvin*, No. 12-cv-1039, 2014 WL 652314, at *8 (W.D. Okla. Feb. 19, 2014) ("On remand, the ALJ should decide if there is medical evidence of DAA. If not, Plaintiff's burden of proof has been met, and an award of benefits should follow."). "If there is medical evidence of DAA, the ALJ should evaluate whether [Brown] would be disabled absent the effects of DAA, following the standards set forth herein and in 20 C.F.R. § 416.935, SSR 13–2p, and POMS 90070.050." *Id.* "On that basis, the ALJ should decide whether DAA is a contributing factor material to [Brown]'s disability." *Id.* This analysis must be clarified on remand. "On remand, the ALJ [should be required to] order a consultative examination, preferably by an individual who specializes in treating and examining people who have substance use disorders." *Arthur S. v. Saul*, No. 4:19-cv-5011, 2019 WL 13466557, at *4 (E.D. Wash. Oct. 28, 2019).

7

## CONCLUSION

For the reasons stated above, I recommend this matter be remanded to the Commissioner so the ALJ can determine, in the first instance, whether Brown actually has a substance use disorder and, if he does, whether it is material to the ALJ's disability determination. I further recommend the ALJ be required to order a consultative evaluation by an individual specializing in substance use disorders.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 4th day of March 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE